LESCHES LAW
LEVI LESCHES — Cal. Bar No. 305173
5757 Wilshire Boulevard, Suite 535
Los Angeles, CA 90036
Phone: (323) 900-0580
Email: levi@lescheslaw.com

ATTORNEYS FOR
Plaintiff Harold Pick

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Harold Pick,<br><br>                     Plaintiff,<br><br>       v.<br><br>MOTOROLA SOLUTIONS, INC., a Delaware Corporation; FEDERAL BUREAU OF INVESTIGATION; EXECUTIVE OFFICE OF THE UNITED STATES ATTORNEY'S OFFICE; UNITED STATES ATTORNEY'S OFFICE FOR THE NORTHERN DISTRICT OF ILLINOIS.<br><br><br><br>                     Defendants. | **Case No: 2:20-cv-8011**<br><br>**CAUSE OF ACTIONS FOR:**<br><br>(**1**) **INDEPENDENT ACTION TO RELIEVE A PARTY FROM A JUDGMENT, ORDER, OR PROCEEDING (FOURTH AMENDMENT GROUNDS)**<br><br>(**2**) **FOIA INJUNCTION TO PRODUCE RECORDS**<br><br>(**3**) **FOIA INJUNCTION FOR ADEQUATE SEARCH AND FOR PRODUCTION OF RECORDS** |

COMPLAINT

Plaintiff Harold Pick, demanding a jury trial on all counts for which a jury may be had, alleges:

**JURISDICTION & VENUE**

1.     **Plaintiff Harold Pick ("PICK")**, at all times relevant herein, was a resident, domiciliary, and citizen of California, with his primary place of residence in Los Angeles County.

2.     **Defendant MOTOROLA SOLUTIONS, INC. ("MOTOROLA")** is a corporation organized under the laws of the state of Delaware.

3.     **Defendant FEDERAL BUREAU OF INVESTIGATION ("FBI")** is the principal investigative arm of the United States Department of Justice.

4.     **Defendants EXECUTIVE OFFICE OF THE UNITED STATES ATTORNEY'S OFFICE** and **UNITED STATES ATTORNEY'S OFFICE FOR THE NORTHEN DISTRICT OF ILLINOIS** are offices of the United States Department of Justice.

5.     Federal jurisdiction over the first cause of action arises pursuant to section 1331 of title 28 of the *United States Code*, as the underlying judgment in *Motorola Inc v. Pick* 2:04-cv-02655 arose from a federal question; and an independent action to set aside a prior judgment should be tried in the court that entered the prior judgment.  *Locklin v. Switzer Bros.*, 335 F.2d 331, 334 (7th Cir. 1964).

6.     Federal jurisdiction over the first cause of action arises pursuant to section 1332 of title 28 of the *United States Code*, as there is complete diversity between the parties and the amount in controversy exceeds $75,000.

7.     Federal jurisdiction over the second and third causes of action arises pursuant to subdivision (a)(4)(B) of section 552 of title 5 of the *United States Code.*

8.     Because "part of the events or omissions giving rise to the claim" occurred in the Central District for the State of California, venue for the first cause of action is appropriate pursuant to subdivision (b)(2) of section 1391 of title 28 of the *United States Code*.

9.     Because Harold Pick, Complainant–Requester, resides in the Central District for the State of California, venue for the second and third causes of action is appropriate pursuant to subdivision (a)(4)(B) of section 552 of title 5 of the *United States Code*.

10.    Defendant Motorola is subject to personal jurisdiction in this district because Motorola filed the underlying action, *Motorola Inc v. Pick* 2:04-cv-02655, within this district.

11.    The federal defendants are subject to personal jurisdiction in this district pursuant to subdivision (a)(4)(B) of section 552 of title 5 of the *United States Code*.

## GENERAL ALLEGATIONS

12.    Motorola Solutions, Inc., formerly known as Motorola, Inc. ("Motorola"), is a manufacturer of handheld radios colloquially known as "walkie talkies."

13.    Motorola specializes in direct sales of its products to governmental agencies, and Motorola has historically exerted strong downstream control over the trade in its goods.  Doing so preserves Motorola's dominant position and/or market advantage in bidding for government contracts.

14.    As part of Motorola's strategy to control the downstream market, Motorola, prior to its 2011 reorganization, engaged in an aggressive campaign of filing trademark infringement suits against second-hand repair shops and refurbishers, contending that those repairs constituted a complete rebuild and infringed on Motorola's trademarks.

15.     Motorola used a team of repeat-player attorneys, initially a practice group at Manatt, Phelps & Phillips, LLP, and, after 2005 or so, at Seyfarth Shaw LLP, whom Motorola used to sue and/or obtain injunctions against and/or obtain cease-and-desist settlements against numerous mom-and-pop repairshops that had attempted dealing in secondhand Motorola radios. *See, e.g., Motorola v. Mocoola Accessories et al.*, D. Nev. 2:08-cv-00414; *Motorola, Inc. v. Omnicom International, Inc.*, N.D. Ill. 1:06-CV-06035; *Motorola, Inc. v. National Electronics, Inc.*, D. Nev. 2:07-CV-00016; *Motorola, Inc. v. PageComm of Illinois, Inc., et al.*, N.D. Ill. 1:07-CV-05703; *Motorola, Inc. v. Power Cell International, Inc.*, N.D. Ill., 1:07-CV-02025; *Motorola, Inc. V. VIP Wireless Inc.*, E.D. Pa., 2:07-CV-00614; *Motorola, Inc. V. Wireless Xcessories Group, Inc.*, E.D. Pa., 2:07-CV-00618.

### Origins of the Underlying Action

16.     One such action was the underlying action, *Motorola Inc v. Pick* 2:04-cv-02655 ("underlying action").

17.     Harold Pick was formerly in the business of refurbishing handheld radios, including Motorola radios.

18.     In the early 2000's, Harold Pick and/or others bid on, and won, a small contract for supplying the Los Angeles County's Sheriff's Department with secondhand radios.

19.     Separately, Harold Pick serviced radios for a certain Nicholas DeLuca.

20.     Unbeknownst to Harold Pick, DeLuca was a conman and was engaged in a scheme to steal and/or defraud Motorola out of hundreds-of-thousands-of-dollars' worth of radio parts and supplies.

21.     Shortly thereafter, Motorola filed the underlying action, *Motorola Inc v. Pick* 2:04-cv-02655, contending that Pick's resale of refurbished radios

violated the Lanham Act.

22.    The underlying complaint, filed on April 15, 2004—and attached hereto as **Exhibit "A"**—also alleged that Harold Pick and Dale Ketchersid, together with a certain Ernest Lindsey, Aldo R. Interiano, Todd Davis, Robert Sharp, Jim Harris, Paul Mendele, Eric P. Winkle, and another half-a-dozen entities had conspired and/or participated in defrauding Motorola out of $900,000 worth of radio parts.  *See* **Ex. "A"** ¶ 67.

### The FBI's Raids on Harold Pick

23.    Motorola's April 15, 2004 complaint referenced certain FBI raids that had been executed against Pick and DeLuca's offices in February 2004.

24.    To quote the declaration of Kent Vandersteen—one of the agents participating in the February 6, 2004 search of Plaintiffs' offices—the FBI "participated in a search and seizure at 10916 La Cienega Boulevard, Los Angeles, California . . . as part of an ongoing FBI investigation related to the sale of counterfeit Motorola two-way radios to the Michigan State Police." **Exhibit "B"** [May 16, 2005 Decl. of Kent J. Vandersteen].

25.    As part of the February 6, 2004 search, the FBI seized "numerous computers, hard drives, two-way radios, and business records" from the 10916 La Cienega Boulevard address.  **Ex. "B"** [May 16, 2005 Decl. of Kent J. Vandersteen] ¶ 2.  Those items were inventoried by Deborah Cole of the FBI's Los Angeles office.  *Id*., ¶ 3.  Deborah Cole, with the assistance of an evidence support technician, shipped all the inventoried items seized by Vandersteen to the FBI's Detroit offices.  *Id*.

26.    On February 19, 2004, Vandersteen picked those items up from Shannon Eldridge, a FBI's Detroit evidence support technician.   *Id*., ¶ 4. Vandersteen then transported those items to Lansing, Michigan.  *Id*.

27.    As explained below, a computer of unknown provenance was also

added to the FBI's inventory list.

### The FBI's Still-Unexplained Assistance to Motorola in Prosecuting Civil Claims Against Harold Pick

28.     At some time between April 16, 2004, and June 21, 2004, an unknown individual in the FBI provided to Motorola, Inc., a private party—in apparent violation of the DOJ's *Touhy* regulations—access to the evidence that the FBI had seized from Pick in the 10916 La Cienega search.

29.     Subpart B of Part 16 of Title 28, Code of Federal Regulations, sometimes referred to as the Department's *Touhy* regulations, named after *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), provide that no present or former employee of the Department of Justice may testify or produce Departmental records in response to subpoenas or demands of courts or other authorities issued in any state or federal proceeding without obtaining prior approval by an appropriate Department official.   (quoted from https://www.justice.gov/jm/jm-1-6000-doj-personnel-witnesses)

30.     The apparent violation of the DOJ's *Touhy* regulations is demonstrated by Motorola's June 18, 2004 First Amended Complaint ("FAC") in the underlying action.

31.     As stated, Motorola's lawsuit contended that Harold Pick was an accomplice to Nicholas DeLuca, and that Pick, together with DeLuca, had been stealing radio parts from Motorola, before assembling those parts into counterfeit radios and selling those radios to the public.   *See* **Ex. "A".** Motorola's *April 15, 2004* Complaint did not raise any allegations regarding evidence seized at the *February 6, 2004* 10916 La Cienega raid.   See **Ex. "A",** ¶¶ 48—50.

32.     Yet, on *June 18, 2004,* Motorola, through apparently-miraculous circumstances, suddenly alleged knowledge regarding the contents of the hard

drives the FBI had seized in February.

33.    Specifically, on June 18, 2004, Motorola filed a First Amended Complaint, **Exhibit "C",** contending that the computers seized by the FBI contained pirated Motorola software. *See* **Ex. "C",** ¶ 51.

34.    Motorola's June 18, 2004 knowledge was nothing short of miraculous, because, as of June 18, 2004, the government had not yet responded to Motorola's subpoenas.  The government first produced evidence, in response to Motorola's subpoenas, on March 23, __2005__.  **Ex. "D"** (May 16, 2005 Decl. of Mark Alcock) ¶ 2; **Ex. "E"** (May 16, 2005 Decl. of FBI Special Agent Kenneth McGuire III) ¶¶ 2–3.

35.    Even after receiving the subpoenaed hard drives from the FBI in 2005, Motorola required the services of a forensic specialist to determine what software resided on that hard drive.  **Ex. "D".**   Yet, somehow, Motorola attorneys in in June 18, 2004 already had knowledge regarding the contents of a drive in the FBI's custody, which was part of an active criminal investigation file. Furthermore, Motorola's attorneys knew in June 18, 2004, information that later required forensic analysis to determine.

36.    Additionally, the FBI allowed a civilian Motorola employee to participate in the La Cienga search.  As alleged in ¶ 49 of Motorola's Complaint in the underlying action, **Ex. "A"**, "[d]uring the search, Patrick Harrington, Manager of Intellectual Property Enforcement, Motorola Commercial, Government, and Industrial Sector . . . assisted the officers at both search locations in the identification of Motorola products, identified several Motorola 'PRO Series' radios, which are distributed and sold exclusively in Latin America."

37.    Motorola further submitted evidence demonstrating that its employees participated, under unexplained circumstances, in the execution of

the FBI's search and seizure. *See Motorola, Inc. v. Pick et al.*, CD. Cal., 2:04-cv-02655, ECF No. 208 ["Notice of Lodging of tape showing [Motorola employee] Patrick Harrington with evidence at FBI Raid . . ."].

38.   Additionally, at the site of the raid, FBI Special Agent Vandersteen interrogated Pick.   Peculiarly, Vandersteen's questions pertained to Pick's successful bid for the LASD contract.   Vandersteen barely discussed DeLuca, or any of the other trademark allegations made in Motorola's complaint.

**The FBI Submits Key Evidence that Judge Collins Incontrovertibly Relied Upon in Granting Liability-Phase Summary Judgment Against Pick**

39.   On April 26, 2005, Motorola filed a Motion for Summary Judgment against Harold Pick in the underlying action.

40.   Motorola's motion contended that pirated Motorola software was found on a certain "Drive 9" that had been seized by the FBI from Harold Pick on February 6, 2004.   ECFs Nos. 183—235; *see also* **Ex. "F".**

41.   On May 26, 2005, Judge Audrey B. Collins granted Motorola's Motion for Summary Judgment.   **Exhibit "G",** ECF No. 235.

42.   **Relying on the declarations submitted by the FBI**, Judge Collins found that Pick's computer had harbored thirteen unlicensed Motorola software programs and that Pick had therefore infringed ten of Motorola's copyrighted works. Judge Collins severed the issues of damages to be tried before a jury.

43.   Pick timely preserved his objections to the competency of Motorola's evidence.   When Motorola's moving papers contended that Alcock, its expert's forensic examination, had identified 12 unlicensed software programs on "Drive 9," Pick challenged the chain-of-custody for the hard drive that Motorola had inspected.

44.   In response to such challenge, FBI Agents McGuire and

Vandersteen declared that they had personally conveyed accurate copies to Alcock, Motorola's retained expert.

45. Significantly, Vandersteen's declaration omitted the "mystery laptop" first disclosed by the FBI on August 31, 2020.

46. Prior to trial, Pick sought leave to depose Vandersteen, because Judge Collins granted Motorola's motion to allow Vandersteen to testify. Judge Collins allowed Pick to depose Vandersteen during a lunch-break in trial in one of the days prior to Vandersteen's trial testimony. *Motorola, Inc. v. Pick et al*, C.D. Cal., 04-cv-02655, ECF No. 318, pp. 10, n.4.

47. Pick's recollection is that Vandersteen uniformly objected to all substantive questions regarding the harddrive by asserting privileges due to the ongoing criminal investigation into DeLuca and Pick.

48. At the present moment, the search for the Vandersteen-deposition court reporter remains ongoing.

49. At the trial in Motorola's lawsuit, the jury awarded Motorola $100,000.00 damages for each piece of Motorola software that was claimed by Alcock, Motorola's forensic examiner, to have been found on "Drive 9" seized by the FBI. **Exhibit "H",** Judgment in *Motorola, Inc. v. Pick et al*, C.D. Cal., 04-cv-02655.

50. **Harold Pick prevailed on all other claims.**

51. Motorola tried to the jury its theory that radio refurbishment constituted trademark infringement. Motorola lost. **Ex. "H".**

52. Motorola tried to the jury its theory that Harold Pick participated in DeLuca's fraud. Motorola lost. **Ex. "H".**

53. Accordingly, it is **incontrovertible** that the $1,200,000 judgment entered against Pick and in favor of Motorola in the underlying action relied on Vandersteen and McGuire's declarations regarding the chain-of-custody for

COMPLAINT

a harddrive that was seized by the FBI on February 6, 2004, never to be seen again.

54.   Pick, furthermore, sought discovery regarding the hard drive the FBI had submitted against him; and Pick's discovery was stymied by the FBI's refusal to testify due to the ongoing criminal investigation.

## The FBI Investigation Exonerates Pick

55.   On November 21, 2007, the United States, acting through the United States Attorney's Office for the Northern District of Illinois, formally charged DeLuca with Frauds and Swindles under 18 U.S.C. § 1341.

56.   DeLuca plead guilty to the charge.

57.   In his Sentencing Memorandum accompanying DeLuca's guilty plea, **Exhibit "I"**, (Deluca Plea Declaration), DeLuca contended, at length, that Harold Pick was his co-conspirator.  DeLuca represented to the sentencing judge that he was "cooperating with Motorola against Harold Pick"; represented to the sentencing judge that he had provided multiple depositions supporting his contention that Pick was a coconspirator.  DeLuca also complained, at length, regarding the government's refusal to request any sentencing downward departure based on DeLuca's "co-operation."

58.   DeLuca's filing also disclosed, for the first time, that throughout the Motorola civil litigation against Pick in the underlying action, Motorola had been actively assisted by DeLuca.  Motorola and DeLuca had signed a cooperation agreement, and DeLuca had provided Motorola with all assistance possible for proving Pick's supposed participation and guilt in DeLuca's scheme.

59.   Although DeLuca's cooperation with Motorola was unbeknownst at the time, Pick, as stated, prevailed at trial.

60.   The jury found, despite Motorola's best efforts to the contrary, that

Motorola could **not** prove—not even based on a simple a preponderance of the evidence—that Pick had participated in DeLuca's fraud.

61. Similarly, the FBI investigation and USAO investigation was closed without Pick being charged.

62. It is clear the FBI and USAO found DeLuca noncredible.

63. The FBI: (1) had raided Mr. Pick's business and seized more than nine hard drives; (2) the FBI had a fully cooperating witness; (3) the FBI conducted an investigation exceeding three years; yet, nevertheless, the FBI elected not to charge Mr. Pick with any crime.

64. There are obvious inferences to be drawn as to whether the evidence regarding Pick seized by the FBI was exculpatory or inculpatory.

65. It should further be noted that Motorola, in its civil suit against Mr. Pick, declined to use Mr. DeLuca as a testifying witness against Mr. Pick.

66. This was despite the fact that Mr. DeLuca had signed a cooperation agreement with Motorola. Harold Pick did not know about the cooperation agreement, which only became public record when DeLuca filed his plea declaration.

## The FBI Initially Claims that it Had Destroyed, in Violation of its Record Retention Policies, All Records Pertaining to Harold Pick

67. In association with Pick's racketeering case against Motorola, *Harold Pick v. James A. Kay, et al.*, 2:19-cv-07137, (which was dismissed at the pleading stage based on Motorola's asserted *Noerr-Pennington* defense, and which is currently being appealed to the Ninth Circuit), Pick filed a FOIA request with the USAO and FBI on or about December 2019. **Exhibit "J".**

68. Shortly thereafter, the USAO rejected Pick's FOIA request based on Exemption 7(C), which shields from disclosure personal information contained in law enforcement records. **Exhibit "K".**

69.    Shortly thereafter, the FBI rejected Pick's request through responding that it **had no records** pertaining to Harold Pick.  **Exhibit "K".**

70.    Pick appealed both determinations to the USDOJ Office of Information Policy.

71.    Pick appealed the USAO's assertion of Exemption 7(C), contending that the manifold irregularities surrounding the Pick raid overrode any privacy interests relating to the investigation into Nicholas DeLuca, particularly because DeLuca had pled guilty.  **Exhibit "L".**

72.    Pick appealed the FBI's "no records" assertion on grounds that the FBI should have had, at minimum, copies of the warrants it had executed, and paperwork relating to the *Touhy*-regulation approvals for Vandersteen and McGuire to assist Motorola's civil suit.  **Exhibit "L".**

73.    Pick appealed the FBI's "no records" assertion on grounds that under sections 4.3.3.2 and 4.3.3.3 of the FBI's 2007 Records Management Policy Guide, the described documents could not be destroyed without prior guidance from the Records Management Division.  Pick further noted that under Classification 15 (Theft from Interstate Shipment); Classification 27 (Patent Matters); Classification 36 (Mail Fraud); Classification 55 (Counterfeiting); Classification 71 (Interstate Matters); or other relevant Classification, the records were subject to 20-year retention policy.  **Exhibit "L".**

74.    Pick further appealed on grounds that if records were improperly destroyed, then Pick was entitled to an investigation into the reasons and circumstances surrounding such destruction.  **Exhibit "L".**

75.    On April 17, 2020, the USDOJ Office of Information Policy **granted** Pick's appeal of the USAO's FOIA denial and remanded the matter back to the Executive Office of the USAO for further handling.  The OIP wrote

that "[i]f EOUSA locates releasable records, it will send them to you directly, subject to any applicable fees." **Exhibit "M".**

76.    To date, neither the EOUSA or USAO for N.D.Ill or W.D.Mich. have made any further response.  To date, no documents have been produced by either the EOUSA or USAO for N.D.Ill or W.D.Mich.

77.    On August 19, 2020, the USDOJ Office of Information Policy confirmed that the FBI had no records and therefore could not produce documents. **Exhibit "M".**

78.    The OIP wrote: "After carefully considering your appeal, I am affirming the FBI's action on your client's request. The FBI informed your client that it could locate no responsive records subject the FOIA in its files.  I have determined that the FBI's action was correct and that it conducted an adequate, reasonable search for such records. Please be advised that this Office's decision was made only after a full review of this matter.  Your appeal was assigned to an attorney with this Office who thoroughly reviewed and analyzed your appeal, your client's underlying request, and the action of the FBI in response to your client's request."

79.    The OIP finding was personally signed by Matthew Hurd, Active Chief for the Administrative Appeals Staff.

**The FBI Clarifies that the OIP Failed to Conduct a Reasonable Search**

80.    After receiving the OIP's response, Pick contacted the FBI Detroit office to advise that: (1) Pick was unable to locate any warrant on the N.D. Ill. Docket; the C.D. Cal. docket; the D. Ariz. docket, or the D. Nev. docket; (2) Pick had not been able to obtain a warrant copy through FOIA; and (3) that absent immediate action by the FBI Detroit, SA Vandersteen would be personally sued under *Bivens*.

81.    Within hours of speaking to counsel for the FBI Detroit, the FBI

Detroit coughed up a two-page "FD-302a" form from the February 6, 2004 raid. **Exhibit "N".**

82.   No warrant was provided by the FBI.

83.   The relative ease with which FBI Detroit located file 288E–DE–95150 after being warned about a *Bivens* suit calls into open question the credibility of the OIP's August 19, 2020 "no records" finding.

84.   The relative ease with which FBI Detroit located file 288E–DE–95150 after being warned about a *Bivens* suit calls into open question the credibility of the OIP's August 19, 2020 representations that "the FBI's action was correct and that it conducted an adequate, reasonable search for such records."

85.   After clarification that Judge Segal had issued the warrant, Pick was able to use that information to identify related case *USA v. 10916 La Cienega*, CACD No. 2:04-mj-00303-UA.

86.   Pick cannot ascertain whether 2:04-mj-00303-UA is sealed, or what warrants were issued, or what declarations were submitted by the FBI, because due to the COVID-19 public health emergency, the National Archives at Riverside and Riverside Federal Records Center are closed until further notice.

### FIRST CAUSE OF ACTION

Action to Vacate a Judgment

**By Plaintiff Pick against Defendant Motorola**

1.   Plaintiff herein incorporates all prior paragraphs and allegations.

2.   Motorola's civil judgment is based entirely on Vandersteen's statement that the "Drive 9" mirrored image he provided to Motorola was genuine and unaltered.

3.   Vandersteen, however, refused to testify, citing the ongoing

criminal investigation, and then, after the criminal investigation concluded, the FBI refuses to produce an iota of evidence or any copies of the records it confiscated from Pick.

4.     The FBI's stonewalling demonstrates that summary judgment should not have been granted when there are clear credibility issues relating to the reliability of a federal officer who continues to refuse to disclose what representations were made to Judge Segal; who continues to refuse to produce documents in compliance with FOIA; who allowed civilian participation in the search of a competitor's property; and who continues to refuse to return seized property—or, more accurately—seized evidence to its lawful owner.

5.     Furthermore, Motorola's own allegations in ¶ 49, and the documents in lodged at ECF No. 208, indicated that Motorola may have aided and abetted the misconduct at issue.

6.     Due to the pending criminal investigation, and due to the threat of indictment hanging over Pick's head during the civil trial, Harold Pick was unable to effectively examine the source of the evidence used to obtain a summary judgment against Harold Pick.

7.     Harold Pick attempted deposing Vandersteen, but Vandersteen refused to testify due to the pending investigation.

8.     Harold Pick accordingly maintains a common-law action in equity to determine the evidentiary adequacy of the government's declarations; to determine whether the government's declarations were based on evidence seized in violation of the Fourth Amendment, including, without limitation, whether the government made misrepresentations to Judge Segal; to obtain replevin of the seized evidence; and to vacate Motorola's judgment in the event the trier of fact determines, by a preponderance of the evidence, that the chain of custody asserted by Motorola was unreliable; that the Fourth

Amendment rights of Pick and/or others were violated; that summary judgment was improperly granted without disclosure to Pick or Judge Collins regarding evidentiary weaknesses that Vandersteen and the FBI improperly prevented Pick from taking discovery over; or any other grounds at law or equity to set aside the judgment.

## SECOND CAUSE OF ACTION

FOIA DOCUMENT INJUNCTION

**By Plaintiff Pick against Defendant Executive Office of the United States Attorney's Office; Defendant United States Attorney's Office for the Northern District of Illinois**

9.     Plaintiff herein incorporates all prior paragraphs and allegations.

10.    Plaintiff has been harmed by Defendant's FOIA noncompliance, because the lack of transparency hinders, amongst other matters, Plaintiff's ability to prove whether the FBI altered and/or misrepresented the chain of custody for the "Drive 9" that gave rise to liability against Plaintiff.

11.    Plaintiff has been harmed by Defendant's FOIA noncompliance, because the lack of transparency hinders, amongst other matters, whether Defendants' records support whatever representations were made to Judge Segal.

12.    Because Defendant failed to comply with Plaintiff's request within the statutory time periods required under FOIA, Plaintiff is deemed to have exhausted all prefiling obligations.

///
///
///
///

---

## THIRD CAUSE OF ACTION

FOIA STATEMENT OF COMPLIANCE &

FOIA DOCUMENT INJUNCTION

**By Plaintiff Pick against Defendant Federal Bureau of Investigation**

13.    Plaintiff herein incorporates all prior paragraphs and allegations.

14.    Plaintiff has been harmed by Defendant's FOIA noncompliance, because the lack of transparency hinders, amongst other matters, Plaintiff's ability to prove whether the FBI altered and/or misrepresented the chain of custody for the "Drive 9" that gave rise to liability against Plaintiff.

15.    Plaintiff has been harmed by Defendant's FOIA noncompliance, because the lack of transparency hinders, amongst other matters, whether Defendants' records support whatever representations were made to Judge Segal.

16.    Because Defendant failed to provide within the statutory time periods required under FOIA a statement demonstrating that the agency conducted a search reasonably calculated to uncover all relevant documents, Plaintiff is entitled to compel the agency to make a sufficient showing. *Weisberg v. Dep't. of Justice*, 745 F.2d 1476, 1485 (D.C.Cir.1984).

17.    Furthermore, the incontrovertible evidence regarding the FBI's August 31, 2020 limited production conclusively demonstrates that the FBI and OIP failed to conduct a reasonable inquiry.


## PRAYER FOR RELIEF

Plaintiff Pick accordingly prays against MOTOROLA SOLUTIONS INC. for an injunction and/or judgment vacating the judgment in *Motorola Inc v. Pick* 2:04-cv-02655.

Plaintiff Pick accordingly prays against Defendant EXECUTIVE OFFICE OF THE UNITED STATES ATTORNEY'S OFFICE; and Defendant UNITED STATES ATTORNEY'S OFFICE FOR THE NORTHERN DISTRICT OF ILLINOIS:

(1)   For an order for Defendant to produce, by a date certain, all non-exempt records and a *Vaughn* index of any withheld documents or redactions made;

(2)   For all attorneys' fees incurred in the prosecution of this suit and in the prosecution of Pick's FOIA appeals;

(3)   For all costs of suit;

(4)   For such other and further relief as the Court deems just and proper.

Plaintiff Pick accordingly prays against FEDERAL BUREAU OF INVESTIGATION for:

(5)   For an order for Defendant to provide a detailed sworn statement regarding the adequacy of its search;

(6)   For an order for Defendant to produce, by a date certain, all non-exempt records and a *Vaughn* index of any withheld documents or redactions made;

(7)   For all attorneys' fees incurred in the prosecution of this suit and in the prosecution of Pick's FOIA appeals;

(8)   For all costs of suit;

(9)   For such other and further relief as the Court deems just and proper.

///
///
///

Dated: September 1, 2020          **LESCHES LAW**


   _/s/ Levi Lesches
Levi Lesches
Attorneys for Plaintiff Harold Pick

COMPLAINT

— **JURY DEMAND** —

Plaintiff hereby demands a jury trial with respect to all issues triable by jury.

Dated: September 1, 2020        **LESCHES LAW**

            /s/ Levi Lesches
       Levi Lesches
       Attorneys for Plaintiff Harold Pick

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT FOR DAMAGES — JURY TRIAL DEMANDED